# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | : | |
| REPUTATION.COM, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 21-129-LPS-CJB |
| | : | |
| BIRDEYE, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>MEMORANDUM ORDER</u>

WHEREAS, Magistrate Judge Burke issued a 30-page Report and Recommendation (the "Report") (D.I. 127) on January 31, 2022, recommending that the Court grant Defendant Birdeye, Inc.'s ("Birdeye" or "Defendant") motion to dismiss Reputation.com, Inc.'s ("Reputation" or "Plaintiff") First Amended Complaint ("FAC") (D.I. 33) on the basis that the asserted claims of the four patents-in-suit are directed to patent-ineligible subject matter pursuant to 35 U.S.C. § 101 (D.I. 44);

WHEREAS, on February 18, Plaintiff objected to the Report ("Objections" or "Objs.") (D.I. 129);

WHEREAS, on March 11, Defendant responded to Plaintiff's Objections ("Response" or "Resp.") (D.I. 132);

WHEREAS, the Court has considered the parties' objections and responses *de novo*, *see* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011);

**NOW THEREFORE, IT IS HEREBY ORDERED** that:

1.      Plaintiff's Objections (D.I. 129) are **OVERRULED**, Judge Burke's Report (D.I. 127) is **ADOPTED**, Defendant's motion (D.I. 44) is **GRANTED**, and Plaintiff's request for leave to amend is **GRANTED**.

2.      Plaintiff objects to the Report's recommendation regarding the patent eligibility of representative claim 13 of U.S. Patent No. 10,354,296 (the "'296 patent"); representative claim 19 of U.S. Patent No. 10,445,794 (the "'794 patent"); representative claim 18 of U.S. Patent No. 10,180,966 (the "'966 patent"); and representative claim 16 of U.S. Patent No. 8,918,312 (the "'312 patent").  Reputation does not object to the Report's treatment of those claims as representative of the asserted claims of the patents-in-suit.  The objections may fairly be characterized as coming within four categories, and each lacks merit.

3.      First, Reputation argues that at *Alice* step one, the Report fails to consider the patents' character as a whole in determining whether the claims are directed to an abstract idea. (*See* Objs. at 5-6)  More specifically, Plaintiff appears to take issue with the Report's ***order*** of analysis, asserting that Judge Burke "began with the claims" and "worked backwards" to find support in the specification for the conclusion that the claims are directed to abstract ideas.  (*Id.* at 6)  As Birdeye notes, however, the focus of the § 101 inquiry is indisputably on the language of the claims themselves.  (*See* Resp. at 2-3)  Accordingly, it is sensible to begin the analysis there.  There is also no support for the notion that the Report "predetermined" that the claims are directed to abstract ideas or "backfilled that conclusion with reference to the specification." (Objs. at 4, 6)  Instead, to determine what each representative claim is "directed to," the Report carefully considers the language of the claims, including by identifying the claims' specific component parts.  (*See, e.g.*, Report at 5, 13, 20, 26-27)  In so doing, the Report does not simply defer to Defendant's proposed abstract ideas.  With respect to the '966 patent, for example, the

Report concludes that, while some of the claim language overlaps with Birdeye's abstract idea, "there is also more to the claim."  (*Id.* at 20)

4.      Next, as the Federal Circuit instructs, the Report turns to the specification for further guidance.  *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) ("[T]he 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether their character as a whole is directed to excluded subject matter.") (internal quotation marks omitted).  For each of the four patents-in-suit, the Report considers the specification's explanations of the problems the patents are designed to solve and searches for descriptions of technological solutions to those problems.  (*See, e.g.*, Report at 5-6, 13-14, 20-21, 27)  With respect to the '794 patent, for example, the Report investigates portions of the specification that "hint at what could be a more narrow focus" beyond the abstract idea proposed by Defendant.  (*Id.* at 14-15)  Only after carefully and methodically considering both the claim language and specification, as to each representative claim, does the Report conclude that the claims are directed to abstract ideas, rather than to improvements in online reputation management ("ORM") system technology, as Reputation instead contends.  (*See, e.g.*, Objs. at 4-5)  The Report correctly concludes that the representative claims are directed to the abstract ideas it articulates.[1]  Such conclusions are well-reasoned and based, as they must be, on a consideration of the claims' character as a whole.  *See Enfish*, 822 F.3d at 1335.

5.      Second, Plaintiff contends that the Report dismisses the well-pled allegations in the FAC concerning the context of the patents-in-suit and resolves factual disputes in Defendant's favor.  (*See* Objs. at 6-7)  The Court disagrees.  Taking representative claim 13 of

---

[1] Given the detailed reasoning supporting these conclusions provided in the Report (*see, e.g.*, Report at 4-8, 12-15, 19-23, 26-28), which the Court adopts, it is unnecessary to address the step one inquiry in further detail.

the '296 patent as an example, the Report considers the patent's context, including the FAC's articulation of the problems the patent aimed to solve and how it purported to solve them.  (*See* Report at 6-7 & n.5)  The Report rejects the notion that such context confers patent eligibility, explaining that "just because use of a claimed method might lead to a helpful, or even novel, outcome does not necessarily mean that the claim is patent eligible."  (*Id.* at 7 n.5)  The Report also considers the allegation in the FAC that the '296 patent provides a solution "rooted in computer technology" (FAC ¶ 34), as well as argument from Reputation's counsel that the patent is "clearly trying to solve technological problems" (Report at 7).  It determines that those assertions are conclusory and lack support from the claim language itself.  (*See id.* at 7 n.5)  With respect to the other three patents-in-suit, the Report does not simply "dismiss" the allegations in the FAC or resolve them uncritically in Birdeye's favor.  Rather, it considers them and concludes they are conclusory and unsupported by the intrinsic record, particularly the claim language itself.  (*See* Resp. at 4-6)  As articulated in *WhitServe LLC v. Dropbox, Inc.*, 2019 WL 3342949, at *7 (D. Del. July 25, 2019), *aff'd*, 854 F. App'x 367 (Fed. Cir. 2021), such conclusory allegations are insufficient to establish a factual dispute, much less an inventive concept.

6.      The Report also considers the patents' prosecution histories but finds them insufficient to establish a factual dispute at *Alice* step two.  (*See, e.g.*, Report at 10-11)  For example, during prosecution of the '296, '794, and '312 patents, although the Examiner ultimately found the claims-at-issue patent eligible, the Examiner provided little analysis to support that conclusion.  (*See id.* at 11, 16, 28-29)  Additionally, the Report notes that the aspect of the '296 patent claims the Examiner pointed to as unconventional "appears to be little more than a re-statement of the abstract idea at issue."  (*Id.* at 11)  With respect to the '966 patent, although the Examiner advised the applicant that it could overcome a § 101 rejection by

4

amending the claims to include "an automated element for preliminary coding," the Report correctly notes that simply automating a claim "adds nothing to the eligibility calculus." (*Id.* at 23-24)  Accordingly, the Report did not err in concluding that the Examiner's statements failed to establish a factual dispute, or an inventive concept, at *Alice* step two.

       7.      Third, Reputation alleges the Report sua sponte raises claim construction issues and resolves them in Defendant's favor.  (*See* Objs. at 7)  The Report does neither.  In its effort to locate limitations in the intrinsic record that ***may*** confer patent eligibility, the Report notes that "if the claim was even arguably limited in these ways, Plaintiff had ample opportunity to tell the Court this.  It could have said so in its answering brief, or argued this during the hearing.  It could have proposed a construction . . . .  But it did not." (Report at 15)  The Report does not "resolve" any claim construction issues; nor does it promise that successful claim construction arguments were even available to Plaintiff.  Instead, the Report's references to claim construction reflect instances in which the Report is searching for ***something*** that may confer eligibility, and, in the absence of – for example – a proposed claim construction, it finds nothing.

       8.      For example, in searching for an inventive concept at *Alice* step two, the Report notes that, with respect to the '296 and '794 patents, Reputation makes little attempt to explain which aspect of the representative claims is inventive.  (*See id.* at 9, 15)  As to claim 13 of the '296 patent, the Report considers Plaintiff's reference to the claimed "follow-up engine," but is not persuaded it amounts to an inventive concept.  (*See id.* at 9)  The Report notes that the specification refers to the follow-up engine "only in terms of the results it generates" and observes that Plaintiff does not propose a claim construction that would suggest otherwise (i.e., by requiring particularized software or hardware limitations).  (*Id.*)  As to claim 19 of the '794 patent, Reputation's counsel offered a construction for the claimed term "dynamically

determining" (*id.* at 17), but the Court agrees with the Report that, even applying Plaintiff's proposed construction – "having the system determine based on the input where the user should be directed" – the claim element adds nothing amounting to an improvement in computer technology (*id.*).

9.      Fourth, Plaintiff argues the Report does not recognize the existence of factual disputes at *Alice* step two that preclude dismissal.  For instance, it points again to the Report's characterization of the patent Examiner's statements during prosecution as conclusory and argues the Report's decision to "downplay" such statements "in effect, resolves factual disputes in Birdeye's favor – improper at the motion to dismiss stage."  (Objs. at 8)  The Court agrees, however, with the Report that the Examiner's statements do not raise disputes of fact material to the step two inquiry.  Instead, they are conclusory and do not identify specific, technological improvements covered by the claims that may provide an inventive concept.[2]  Further, in noting that Plaintiff did not cite to any expert testimony regarding § 101 in the FAC (*see* Report at 11 n.9), the Report does not "turn[] Birdeye's burden on its head and require[] Reputation to prove

_____

[2] Plaintiff urges the Court to compare the allegations in the FAC with those made in *InterDigital Technology Corp. v. Lenovo Holding Co.*, C.A. No. 19-1590, which the Court considered during a "101 Day."  (*See* Objs. at 8 n.2)  In that case, in denying a § 101 motion to dismiss, the Court stated: "[t]he operative first amended complaint plausibly alleges that each of the six patents has an inventive concept that was not routine, conventional, and well understood; and it does so . . . for example, by citing to pertinent portion[s] of the prosecution histories." *Pivital IP LLC v. ActiveCampaign, LLC*, 2020 WL 6043919, at *3 (D. Del. Oct. 13, 2020).  Such a comparison, however, only underscores the conclusory nature of Reputation's allegations. While InterDigital's amended complaint detailed the rationale supporting the patent Examiner's conclusions as to eligibility – including discussion of the specific technological improvements over the prior art that the Examiner concluded provided an inventive concept (*see* C.A. No. 19-1590 D.I. 19 ¶¶ 29, 40, 46) – Reputation's FAC provides neither the Examiner's rationale nor an articulation of any concrete, specific technological improvements that could constitute an inventive concept.  Relatedly, the Court is not persuaded that it must credit Plaintiff's speculation that "the Examiner's brevity" is indicative of the Examiner's purported view that "the bases for allowance [we]re clear."  (D.I. 129 at 9)

its patents' validity" or impose a requirement that a party submit an expert report at this stage (Objs. at 9).  Instead, as with the Report's discussion of claim construction, the Report again searches for evidence that could support a finding of patent eligibility – including, perhaps, expert testimony – and finds none.

10.     Reputation requests that, if the Court adopts the Report, as it has, the Court should grant Reputation leave to amend its FAC.  (*Id.*)  Reputation explains that, if permitted, it would add "allegations regarding problems surrounding the operation of ORM systems and specific, real-world examples of improvements in ORM systems that practice the patents' claimed advances."  (*Id.* at 10)  It would also add allegations, and perhaps an expert declaration, to underscore the unconventional nature of the claimed technology.  (*Id.*)  If granted leave to amend, Plaintiff may also include further context for the Examiner's allowance during prosecution.  (*Id.*)  The Court is not persuaded that amendment would be futile.  Moreover, while this case has been delayed, the Court does not find that Reputation has unduly delayed it.  Nor will Defendant suffer any unfair prejudice from amendment (just additional litigation).  Although Reputation has had ample opportunity to present allegations supporting patent eligibility, the Court believes it is most appropriate – considering the totality of circumstances – to provide Reputation one final opportunity to attempt to state a claim.  *See generally Realtime Data LLC v. Reduxio Sys., Inc.*, 831 F. App'x 492, 498 n.3 (Fed. Cir. 2020) ("Factual allegations in a complaint can suffice to overcome *Alice* step 2 and district courts should, as in any civil case, freely grant leave to amend to allege the necessary facts.").


March 30, 2022                          _____
Wilmington, Delaware                    HONORABLE LEONARD P. STARK
                                        UNITED STATES CIRCUIT JUDGE